### In re JACOB Y. SHANTZ & SON CO.

#### (District Court, W. D. New York.   June 4, 1913.)

**1. BANKRUPTCY (§ 165\*)—PREFERENCES—DISCHARGE OF INDEBTEDNESS.**

The bankrupt's president, knowing the financial stress under which the bankrupt was, conceived a plan of selling a part of its machinery to a new company, and by doing so continue the business in case the bankrupt was forced to suspend; the scheme being to induce various creditors of the bankrupt to provide funds with which to buy the machinery, and to require them to pay their subscriptions only in case their debts against the bankrupt were fully satisfied. Petitioners, who were creditors of the bankrupt, subscribed to the agreement, providing that the subscribers were to buy the machinery only in case a sum equal to their subscriptions was first paid to them; and, payments having been made to certain of the subscribing creditors, they sought to enforce a lien against the fund realized by the bankrupt's trustee on a sale of the machinery. *Held*, that the subscribers had reasonable cause to believe that a preference was intended, and that the scheme was one to give them a preference, and therefore unenforceable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266;   Dec. Dig. § 165.\*]

**2. PAYMENT (§ 38\*)—APPLICATION—WAGES.**

Where the bankrupt's bookkeeper marked pay envelopes to show to what weeks the money contained therein applied, such marking constituted reasonable and fair notice to the employés that the payments

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were for current wages, and did not apply on account for back wages unpaid.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 99–103; Dec. Dig. § 38.*]

In Bankruptcy. In the matter of Jacob Y. Schantz & Son Company, bankrupt. On petition by certain creditors of the bankrupt to review a referee's decision that a contract for the sale of certain of the bankrupt's machinery operated as a preference. Affirmed.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y., for petitioners.
Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y., for Otto Gruhn.
Wilbur B. Grandison, of Buffalo, N. Y., for trustee.
Clinton K. De Groat, of Buffalo, N. Y., for creditors.

HAZEL, District Judge. This is a petition by three creditors of the bankrupt for a review of the decision of the referee in bankruptcy to the effect that a written agreement dated September 2, 1911, purporting to sell certain machinery in consideration of the discharge of the indebtednesses of the said creditors upon their subscription to a fund for the purchase of such machinery and the payment by one Kultscher of the sum of $2,000, operated as a voidable preference as to the petitioning creditors, who were wage-earners employed by the bankrupt company, but not as to Kultscher, who advanced the cash, and was therefore entitled to a lien on the proceeds realized from the sale of the machinery. The referee also decided that the petitioning creditors were entitled to a preferred payment for wages earned by them during the period of three months immediately preceding the bankruptcy, but that they were not entitled to a preferential payment for wages earned anterior to that period.

Error is assigned to the determination, first, that certain payments, made during the three months preceding the agreement of the bankrupt and the petitioning creditors, were to be applied on wages earned during such period; and, second, that the payments by the bankrupt to the petitioning creditors under the agreement of September, 1911, which they applied on their subscriptions towards the purchase of the machinery, were voidable preferences under section 60 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]).

[1] Considering the latter ground of error, the record shows that the president of the company during a period of financial stress conceived the plan of selling a part of its machinery—a part which was not in use, and the sale of which, it was thought, would not injure the business. It was his intention to start, with the consent of the purchasers of such machinery, a separate and independent plant; this object being fairly ascertained from his testimony, from which the following is quoted:

"And the purpose was 'that, fearing trouble would ensue for the old company, and by doing this it would enable me and a few concerns who wished to see the business progress in the best way possible for the eventual benefit of the other creditors. I meant to run that machinery as a separate cor-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

poration, because I was encouraged that in that way I could get assistance, and without that I could not."

The general scheme, as shown by the evidence, was to induce various creditors of the company to provide funds with which to buy such machinery, and to require them to pay their subscriptions only in case their debts against the company were fully satisfied; the agreement specifically providing that the subscribers were to buy the machinery only in case a sum equal to their subscriptions was first paid to them. This scheme appears so palpably to favor the creditors in question that the presumption at once arises that all the parties had reasonable cause to believe that they were receiving a preference over other general creditors. Therefore the important question is whether, at the time of the alleged payments to Knoll, Shack, and Gruhn, the petitioning creditors, they had reasonable cause to believe that in case of bankruptcy a preference in their favor would result from the subscription agreement. To enable them to enforce a lien against the fund realized in the bankruptcy court on the sale of the machinery would obviously give them an advantage over the general creditors. Their claims, save those as to wages earned within the three months immediately before the bankruptcy proceedings were instituted, were not entitled to priority of payment. It is consequently difficult to avoid the conclusion that the plan adopted by the bankrupt company was a device to give certain creditors a preference over other creditors of the same class, and that the petitioning creditors were aware of such intention, and of the intention of the president of the bankrupt company to save as much as possible from the financial wreck and continue the business, notwithstanding the pendency of bankruptcy proceedings. As the record stands, Knoll, Shack, and Gruhn are presumed to have had knowledge of the insolvency of the company, and reasonable cause for believing that the subscription agreement would operate as a preference to them.

[2] I am of the opinion that the testimony as to the payments made during the three months period by Miss Denninger on behalf of the bankrupt was properly received in evidence. She gave reasonable and fair notice to the employés in question that the payments were for current earnings, and did not apply on the account for back wages, rendering inapplicable the general rule that payments on account may be applied on the most precarious indebtedness, which only holds where there is no contrary agreement. The testimony of Miss Denninger, showing that she marked the envelopes to show to what weeks the money contained therein applied, is not controverted.

I think the referee was right in his decision, and his order is affirmed.